**INSTITUTE OF GOVERNMENTAL ADVOCATES, et al., Plaintiffs,**

v.

**FAIR POLITICAL PRACTICES COMMISSION, et al., Defendants.**

**No. CIVS–01–859 FCD JFM.**

United States District Court, E.D. California.

Filed Sept. 17, 2001.

Charles H. Bell, Jr., Thomas W. Hiltachk Bell, McAndrews, Hiltachk & Davidian, LLP, Sacramento, California, for the plaintiffs.

Bill Lockyer, Attorney General of the State of California, Louis R. Mauro, Supervising Deputy Attorney General, Susan R. Oie, Deputy Attorney General, Sacramento, California, for the defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs, a California non-profit corporation representing the interests of lobbyists and three individual lobbyists, bring a facial challenge to the constitutionality of recently enacted California Government Code section 85702, claiming that it violates their First Amendment rights of freedom of speech and association, their Fourteenth Amendment right to equal protection, and Title 42 U .S.C. section 1983. Section 85702 prohibits a direct contribution by a lobbyist to an elected state officer or candidate for elected state office, if the lobbyist is registered to lobby the governmental agency for which the officeholder works or for which the candidate seeks election. The case is before the court on the parties' cross-motions for summary judgment. Plaintiffs seek a judgment from the court declaring Section 85702 unconstitutional and an injunction restraining the administration, implementation and enforcement of the statute. Defendants, on the other hand, seek to have this court declare the statute constitutional on the grounds that it is narrowly drawn to support a legitimate state interest.

The court heard oral argument on the motions on August 24, 2001. By this order, the court now renders its decision.

## BACKGROUND

Section 85702 is part of the California Political Reform Act ("PRA") which was originally adopted by the voters in 1974 as Proposition 9. Cal.Gov't Code § 81000 *et seq.* The PRA provides for its amendment either by a two-thirds vote of the Legislature or by another initiative statute adopted by the voters. Cal.Gov't Code § 81012. On November 7, 2000 California voters again amended the PRA by adopting Proposition 34. *See* Pls.' Stmt. of Undisputed Facts, filed July 24, 2001 ("Pls.' UF"), No. 10. Defendant Fair Political Practices Commission ("FPPC") is the state agency charged with the administration and implementation of the PRA, including the newly adopted provisions of Proposition 34. *See* Pls.' UF, No. 7.

### 1. Proposition 34 Generally

Effective January 1, 2001, Proposition 34 imposes limits on campaign contributions by "persons" to state candidates and officeholders of varying amounts depending on the state elective office sought. Cal.Gov't Code § 85301. Specifically, a "person" [1] may not contribute more than $3,000.00 per election to a candidate for a legislative office. Cal.Gov't Code § 85301(a). Different contribution limits apply to other statewide elective offices. Cal.Gov't Code 85301(b) and (c).

Proposition 34 also contains many other provisions, including contribution limits on the receipts of political action committees

---

1. The PRA defines a person as an "individual, proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, limited liability company, associa-tion, committee, and any other organization or group of persons acting in concert." Cal. Gov't Code § 82047.

("PACs") and political party committees, voluntary expenditure limits in state elective races, and new disclosure requirements. Cal .Gov't Code §§ 85303, 85400, 85309. Additionally, Proposition 34 increased the maximum administrative fine for a violation of the PRA from $2,000.00 per violation to $5,000.00 per violation. Cal.Gov't Code § 83116. Plaintiffs do not challenge the validity of any of these provisions of Proposition 34; they only challenge the constitutionality of the ban on contributions by lobbyists.[2]

## 2. Proposition 34's Regulation of Lobbyists

Proposition 34 added Section 85702 which provides,

An elected state officer or candidate for elected state office may not accept a contribution from a lobbyist, and a lobbyist may not make a contribution to an elected state officer or candidate for elected state office, if that lobbyist is registered to lobby the governmental agency for which the candidate is seeking election or the governmental agency of the elected state officer.

Violation of this section may be prosecuted civilly or administratively by the FPPC. As stated above, the administrative penalty for violation of the statute is a fine of up to $5,000.00 per violation. Additionally, a knowing and willful violation of the PRA may be prosecuted as a misdemeanor. Cal.Gov't Code § 91000. A person convicted of a misdemeanor under the PRA is prohibited from acting as a lobbyist for a period of four years following the date of conviction. Cal.Gov't Code § 91002.

The PRA defines a lobbyist as

any individual who is employed or contracts for economic consideration, . . . , to communicate directly or through his or her agents with any elective state[,] [agency or legislative] official for the purpose of influencing legislative or administrative action, if a substantial or regular portion of the activities for which he or she receives consideration is for the purpose of influencing legislative or administrative action.

Cal.Gov't Code § 82039. In addition to the statutory definition of a "lobbyist," the California Code of Regulations specifies who will be considered a professional lobbyist required to register and be subject to the reporting and other requirements of the PRA.[3] Cal.Code of Regs. § 18239 ("Regulation 18239"). Those meeting the statutory and regulatory definitions of a "lobbyist" are required to file a lobbyist certification with the Secretary of State. Cal.Gov't Code §§ 86100–86105.

At the beginning of the current legislative session, the California Secretary of State had approximately 1,000 persons registered as "lobbyists." *See* Pls.' UF, No. 16.

## 3. Prior Bans on Contributions by Lobbyists

The concept of banning contributions by lobbyists is not new. Such a ban was part of the original PRA and was the subject of

---

2. Plaintiffs ask the court to sever the invalid provision of Proposition 34, namely Section 85702, pursuant to the Proposition's "severability clause" and state law. *See California Prolife Council v. Scully,* 164 F.3d 1189, 1191 (9th Cir.1999); *Raven v. Deukmejian,* 52 Cal.3d 336, 355–56, 276 Cal.Rptr. 326, 801 P.2d 1077 (1990).

3. Under the PRA, certain lobbyists, lobbying firms, and employers of lobbyists are required to prepare and file public disclosure statements each calendar quarter. Cal.Gov't Code §§ 86113–86118. These reports must include a description of the matters lobbied, contributions made or delivered by the lobbyist, activity expenses (including gifts) made or arranged by a lobbyist and all compensation paid to a lobbyist. *Id.*

litigation brought by a plaintiff in this case, the Institute of Governmental Advocates. *Fair Political Pratices Comm'n v. Sup.Ct.,* 25 Cal.3d 33, 45, 157 Cal.Rptr. 855, 599 P.2d 46 (1979) (*"FPPC v. Sup.Ct."*). Former Government Code section 86202 provided:

> It shall be unlawful for a lobbyist to make a contribution, or to act as an agent or intermediary in the making of any contribution, or to arrange for the making of any contribution by himself or by any other person.

In 1979, the California Supreme Court struck down Section 86202 on the grounds that a total ban of all contributions by any lobbyist is not a "closely drawn" restriction and thus, violated plaintiffs' First Amendment rights of freedom of speech and association.

In 1996, California voters adopted Proposition 208, a complex contribution and expenditure limit scheme that also included a ban on contributions by lobbyists (former Government Code section 5704).[4] Enforcement of that provision, as well as the entirety of Proposition 208 was preliminarily enjoined by this district court in 1998. *California Prolife Council PAC v. Scully,* 989 F.Supp. 1282 (E.D.Cal.1998), *aff'd,* 164 F.3d 1189 (9th Cir.1999).

While Proposition 208 was still enjoined, John Burton, President pro Tempore of the California Senate, authored Senate Bill 1223, another campaign finance reform measure which, when passed by both houses of the Legislature and signed by the Governor, was placed before the voters at the November 2000 General Election as Proposition 34. *See* Defs.' Mem. of P. & A. in Supp. of MSJ, filed July 27, 2001

("Defs.' MSJ"), Ex. D. The Proposition passed by a vote of 60.1% to 39.9%. *Id.*

In addition to adding substantive new provisions, Proposition 34 repealed former Section 85704 and added Section 85702, the subject of this lawsuit.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate when the historical facts controlling the application of a rule of law are undisputed and the complaint raises only a question of law for the court to decide. *Delbon Radiology v. Turlock Diagnostic Ctr.,* 839 F.Supp. 1388, 1391 (E.D.Cal. 1993). In particular, a facial challenge to the constitutionality of a statute is ripe for resolution by summary judgment. *Bullfrog Films, Inc. v.. Wick,* 847 F.2d 502, 505–06 (9th Cir.1988). Such is the case at bar.

## ANALYSIS

### 1. Jurisdiction Over the FPPC

In their moving papers, defendants argued that they were entitled to summary judgment because under the Eleventh Amendment the court lacked jurisdiction over the FPPC. However, at oral argument defendants stipulated to a waiver of their sovereign immunity, thus, establishing this court's jurisdiction over the FPPC. *See Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

---

4. Former Section 85704 read as follows: "[N]o elected officeholder, candidate or the candidate's controlled committee may solicit or accept a campaign contribution or contribution to an officeholder account from, through, or arranged by a registered state or local lobbyist if that lobbyist finances, engages, or is authorized to engage in lobbying the governmental agency for which the candidate is seeking election or the governmental agency of the officeholder."

### 2. Plaintiffs' First Amendment Claim

#### a. Standard of Review

In order to challenge a statute on First Amendment grounds, plaintiffs must first demonstrate that the statute impinges on rights protected by the First Amendment. The United States Supreme Court has held that "contribution ... limitations operate in an area of the most fundamental First Amendment activities," and such limitations "impinge on protected associational freedoms." *Buckley v. Valeo,* 424 U.S. 1, 14 & 22, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).[5] The Court thus held that burdens on contributions may only be sustained if the State demonstrates "a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *Id.* at 25, 96 S.Ct. 612; *see also Nixon v. Shrink Missouri Gov't PAC,* 528 U.S. 377, 387–88, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (affirming standard of review articulated in *Buckley* in assessing the validity of a Missouri state law imposing a limit on political contributions).

#### b. State Interest

Defendants assert the ban imposed by Section 85702 on contributions from lobbyists advances the State's interest in preventing corruption and the appearance of corruption. Plaintiffs do not dispute that this is a sufficiently important state interest. *See* Pls.' Mem. of P. & A. in Supp. of MSJ, filed July 24, 2001 ("Pls.' MSJ") at 10. Indeed, the Court in *Buckley* held that "the prevention of corruption and the appearance of corruption" is a "constitutionally sufficient justification" for a limit on contributions. 424 U.S. at 25–26, 96 S.Ct. 612. Plaintiffs only object to the means chosen, which they contend are not closely drawn to serve the State's interest. The court now turns to that question.

#### c. Contribution Ban

Plaintiffs contend that this court must declare Section 85702 unconstitutional because it suffers from the "same constitutional infirmities" as former Section 86202 which was held unconstitutional by the California Supreme Court in *FPPC v. Sup. Ct.* In *FPPC v. Sup.Ct.,* the court held that Section 86202's total ban of all contributions by any lobbyist was not a closely drawn restriction for the following reasons:

> First, the prohibition applies to contributions to any and all candidates even though the lobbyist may never have occasion to lobby the candidate. Secondly, the definition of lobbyist is extremely broad, to include persons who appear regularly before administrative agencies.... Thirdly, the statute does not discriminate between small and large but prohibits all contributions.

25 Cal.3d at 45, 157 Cal.Rptr. 855, 599 P.2d 46. Plaintiffs argue that Section 85702 suffers from the same problems: (1) it applies to both state officeholders and candidates for state elective office, thus lobbyists cannot contribute to non-incumbent challengers even though they may have no occasion to lobby them; (2) the statutory definition of a lobbyist is the same now as it was in 1979 when the court decided *FPPC v. Sup.Ct.;* and (3) Section 85702

---

**5.** Defendants separately analyzed whether Section 85702 violated plaintiffs' free speech rights versus their association rights. *See* Defs.' MSJ at 14–15. A separate analysis is not required. The Court stated in *Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 299, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) that "[a] limit on contributions ... need not be analyzed exclusively in terms of the right of association or the right of expression. The two rights overlap and blend; to limit the right of association places an impermissible restraint on the right of expression."

imposes a "total" ban on contributions like Section 86202, instead of limiting the amount of contributions.

■ The court does not agree. First, Section 85702 does not prohibit contributions by all lobbyists to all candidates. Rather, by its express terms, Section 85702 only prohibits contributions by lobbyists, if the lobbyist is *registered* to lobby the office for which the candidate seeks election; that is, to those persons the lobbyist *will be* paid to lobby. Additionally, in assessing a similar ban on contributions by lobbyists, the Fourth Circuit rejected the plaintiffs' argument that the ban was not "closely drawn" because it prohibited contributions to candidates. *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 716 (4th Cir.1999), *cert. denied,* 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000) ("NCRL"). The court held that "the threat of contributing to a legislator's challenger can supply as powerful an incentive as contributing to that legislator himself." *Id.* Moreover, the United States Supreme Court held in *Buckley* that the danger of corruption and the appearance of corruption apply with "equal force to challengers and incumbents." 424 U.S. at 33, 96 S.Ct. 612. Accordingly, the court finds that Section 85702's inclusion of "candidates" within the scope of the ban does not render the statute unconstitutional.

■ Next, defendants have demonstrated that the definition of a lobbyist has significantly changed from the definition that existed at the time of *FPPC v. Sup.Ct. See* Exs. B & C to Defs.' MSJ attaching the 1979 and current versions of Regulation 18239. Plaintiffs are correct that the statutory definition of a lobbyist has remained substantially the same; however, plaintiffs fail to acknowledge that the regulations interpreting that definition have changed.[6] Specifically, the current version of Regulation 18239 is much narrower, omitting from its scope certain activities and individuals covered by the previous definition. As a result, certain individuals are no longer required to register as lobbyists. For example, giving "administrative testimony"[7] counted toward determining whether an individual was a lobbyist under the former version of Regulation 18239. Now, such testimony is excluded in making that determination. *See* Defs.' MSJ at 10–11. Similarly, under the current Regulation, a lobbyist is someone who, during a calendar month, spends one-third of the time for which he or she is compensated in "direct communication" with qualifying officials. For a full-time employee, that is over 55 hours per month, while, under the former version, as little as 5 hours in direct communication would have been sufficient to qualify as a lobbyist. *Id.* at 11–12. These examples demonstrate that the term "lobbyist" has been narrowed in a manner that addresses the overbreadth of Section 86202 which prompted the California Supreme Court to find that statute unconstitutional.[8]

---

6. Section 85702's language must be read in conjunction with the applicable regulations because the regulations interpret the statutory language. *FPPC v. Sup.Ct.,* 25 Cal.3d at 45, 157 Cal.Rptr. 855, 599 P.2d 46. Although the regulations are subject to change, this court may properly consider them in their current form in interpreting Section 85702. *See Mission Community Hosp. v. Kizer,* 13 Cal. App.4th 1683, 1691, 17 Cal.Rptr.2d 303 (1993).

7. Administrative testimony is defined almost identically in the 1979 version of Regulation 18239 and the current version.

8. In *FPPC v. Sup.Ct.,* the court was particularly considered because the definition of a lobbyist included persons who appear regularly before administrative agencies. Regulation 18239 addresses this specific issue by completely excluding "administrative testimony" from the criteria for determining whether

■ Furthermore, Section 85702 is not unconstitutional simply because it *bans*, rather than limits, contributions by certain lobbyists. In other words, contrary to plaintiffs' assertions, a ban on contributions is *not* per se illegal. First, as set forth by the United States Supreme Court in *Nixon* the test for determining the validity of the amount of a limitation (here a complete ban) is whether the limit is "so low as to impede the ability of candidates to amass the resources necessary for effective advocacy." 528 U.S. at 397, 120 S.Ct. 897 (internal quotations and citation omitted). Plaintiffs have not argued here, nor is there any evidence to suggest, that candidates will be unable to seek office without *personal* contributions by registered lobbyists.

Additionally, two other courts have upheld bans, albeit temporally limited by the length of the two states' legislative sessions. *NCRL,* 168 F.3d at 714; *Kimbell v. Hooper,* 164 Vt. 80, 665 A.2d 44 (Vt.1995). As stated above, in *NCRL* the Fourth Circuit upheld a ban on contributions by lobbyists to legislators or candidates while the General Assembly was in session, which in North Carolina is one to two months per year. 168 F.3d at 714.[9] The court rejected plaintiffs' argument that the law was unconstitutional because it covered *all* contributions, not just those large enough to support a potential *quid pro quo;* the court stated

[A] court has no scalpel to probe such fine distinctions.... And even were we able to distinguish those dollar amounts that are sufficient to support actual purchases of political favors from those that are not, the appearance of corruption may persist whenever a favorable legislative outcome follows closely on the heels of a financial contribution. Courts simply are not in the position to second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared.

*Id.* at 716 (internal quotations and citations omitted).

*Kimbell* involved a similar ban—lobbyists were prohibited from making contributions to members of the Vermont General Assembly while the Assembly was in session which was for 16 to 17 weeks of the year.[10] In upholding the statute, the state Supreme Court noted that the prohibition "focuses on a narrow period during which legislators could be, or could appear to be, pressured, coerced, or tempted into voting on the basis of cash contributions rather than on consideration of the public weal." 164 Vt. at 91, 665 A.2d 44.

■ Plaintiffs argue that defendants' reliance on these cases is misplaced because Section 85702 does not have a similar restriction prohibiting contributions only while the California Legislature is in session.[11] Plaintiffs' argument is unavailing. Firstly, as set forth in the declara-

someone is a "lobbyist," and thereby required to register.

9. The North Carolina law "prohibit[ed] a lobbyist, a lobbyist's agent, or a political committee that employs a lobbyist from contributing to a member of or candidate for the North Carolina General Assembly or Council of State while the General Assembly is in session." *NCRL,* 168 F.3d at 714.

10. The Vermont law provided that "it shall be prohibited conduct ... when the general as-

sembly is in session ... for a registered lobbyist or registered employer to make or promise a political campaign contribution to any member of the general assembly or any member's campaign committee." 164 Vt. at 83 n. 2, 665 A.2d 44.

11. As support for their argument, plaintiffs submit the California Senate's calendar for this year, wherein it states that the Legislature is in recess for 150 days of the year. *See* Pls.' Second Req. for Jud. Notice, filed August 10, 2001, No. 10.

tions submitted by defendants, significant business is conducted while the California Legislature is in periodic "recesses." *See* Webb Decl., Ex. H to Defs.' Reply on MSJ, filed August 17, 2001 ("Defs.' Reply") (listing interim hearing schedules for the years 1997–2000); Minnehan Decl., Ex. I to Defs.' Reply (describing that as an experienced, registered lobbyist, Ms. Minnehan engages in significant lobbying during legislative recesses); Quarterly Reports of Two Lobbying Firms, including plaintiff Catzen's employer, Ex. M to Defs.' Reply (describing the extensive amount of lobbying that occurred during the last quarters of 1999 and 2000 when the Legislature was in joint recess).

Secondly, the court is not persuaded that the danger of corruption in California is any different when the Legislature is in session than when it is not. To prohibit contributions from lobbyists only when the Legislature is in session draws a temporal distinction with limited practical effect, particularly in light of the year round activities of the California Legislature. Indeed, a promised contribution delivered the day after the session ends provides the same financial benefit and potentially a greater appearance of corruption as one delivered on the first day of the session.

Furthermore, defendants correctly assert that Section 85702 is consistent with *NCRL* and *Kimbell* because in California the Legislature is, effectively, always "in session." The state Constitution provides that the State Legislature shall convene at noon on the first Monday in December of each even-numbered year and shall adjourn *sine die* at midnight on November 30 of the following even-numbered year.

Cal. Const., Art. III. § 3, subd. (a). While the Legislature does take recesses, committee meetings invariably occur during those periods. *See* Defs.' MSJ, Ex. D (Decl. of John Burton, Speaker pro Tempore of the California Senate). Also, as set forth above, significant lobbying and other business takes place during periodic recesses. Therefore, there is no time during which legislators are not considering legislation in one form or another and therefore susceptible to, at least, the appearance of corruption if they accept contributions from those persons who are paid to try to influence that legislation. Furthermore, other elected state officers, such as the Governor, are certainly "on the job" year round.

The court finds that based on these facts, Section 85702 is narrowly tailored given that the California Legislature is effectively conducting the business of the Legislature on a year round basis.

As a final issue, plaintiffs offer alternative proposals for how Section 85702 could be "more narrowly tailored." *See* Pls.' MSJ at 13–16.[12] However, defendants have demonstrated that such amendments appear unnecessary as Section 85702 does not ban all political contributions by lobbyists and is therefore appropriately tailored.

For example, registered lobbyists may directly contribute to state candidates or officeholders whom they are *not* registered to lobby, and they can contribute to their own campaigns if they seek elective office. Registered lobbyists may also contribute to political parties or PACs for purposes

---

**12.** The majority of those proposals are discussed and rejected above, including that Section 85702 should have imposed a limit on contributions rather than a ban, the ban should have been limited to while the Legislature was in session, and the ban should not apply to candidates for office. Plaintiffs also argued that Section 85702 should have provided an exception permitting lobbyists to contribute to the candidate for whom the lobbyist is entitled to vote. The court does not find any support for this proposal in the relevant case law.

other than contributions to candidates or state officers they are registered to lobby. Additionally, lobbyists can spend unlimited amounts in "independent expenditures" on behalf of candidates or elected state officers, even those they are registered to lobby; they can volunteer their services on behalf of any incumbent or candidate, whether or not they are registered to lobby that individual. Registered lobbyists may also advise their employers about making political contributions to any candidate or elected state officer. Further, an individual registered to lobby an administrative agency is not prohibited from contributing to candidates for the Legislature or statewide elective office unless those candidates are members of the specific administrative agency the lobbyist is registered to lobby; similarly, a registered lobbyist would not be prohibited from contributing to a candidate for a local election unless the candidate is a member of the specific agency the lobbyist is registered to lobby. *See* Wardlow Decl., Ex. A to Defs.' MSJ, ¶ 7(a)–(j).[13]

▮▮ Furthermore, defendants correctly argue that Section 85702 does not fail simply because it does not address all "evils," (i.e., plaintiffs argue that Section 85702 does not prohibit lobbyists' employers from making contributions and such employers often use their lobbyists as conduits for contributions; therefore, the appearance of *all* corruption is not allayed by Section 85702). The Legislature is not required to address all evils at once, and its failure to do so does not make one attempt to address a problem (here, Section 85702) unconstitutional. *See Hays v. Wood,* 25 Cal.3d 772, 790, 160 Cal.Rptr. 102, 603 P.2d 19 (1979) (holding that "a legislative body, in addressing a particular problem area, need not attack all phases at once but rather is free to address each in its turn in accordance with perceived legislative priorities"); *see also Werner v. Southern Cal. Associated Newspapers,* 35 Cal.2d 121, 132–33, 216 P.2d 825 (1950) (" 'there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none' "); *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 400, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (holding that if " 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied' "). Moreover, the eradication of all appearances of corruption is not within the province of this court. Rather, the court can only consider whether the acknowledged state interest is advanced by a rational and sufficiently narrow restriction on plaintiffs' First Amendment rights.

In sum, defendants have shown that California has a legitimate state interest in avoiding the potential for corruption and

---

**13.** The court overrules plaintiffs' objection to the Wardlow Declaration, filed August 10, 2001. As set forth in the declaration of Luisa Menchaca, General Counsel for the FPPC, Ms. Wardlow's declaration "accurately describes the [FPPC's] advice given to those who have made telephonic requests [about the statute] to this date." Menchaca Decl., Ex. K to Defs.' Reply, ¶ 8. As General Counsel Ms. Menchaca states that she can "confirm that the Wardlow declaration correctly states staff's current interpretation of [Section 85702]." *Id.* The fact that the FPPC will formally discuss implementing regulations for Section 85702 at its September 2001 meeting is not determinative. In resolving the instant motions, the court may consider the FPPC's current interpretation which is set forth in the Wardlow and Menchaca declarations. Said current interpretation is authoritative. *See* Cal.Gov't Code § 83114 (written advice by the FPPC is a complete defense in any enforcement proceeding initiated by the commission and is evidence of good faith conduct in any other civil or criminal proceedings).

the appearance of corruption that could occur if lobbyists, whose continued employment depends on their success in influencing legislative action, are allowed to make campaign contributions to the very persons whose decisions they hope to influence. Section 85702 achieves this interest by forbidding such contributions from lobbyists to elected state officials or candidates for elected state office when they are registered to lobby those very individuals or their agencies. The statute is thus narrowly tailored to serve the State's important interests, and the court accordingly must grant summary judgment in favor of defendants.

### 3. Plaintiffs' Section 1983 Claim

 Based on the above analysis, plaintiffs have failed to state a claim for relief for violation of their First Amendment rights of freedom of speech and association, and therefore, they cannot state a claim under 42 U.S.C. section 1983. Section 1983 is not, in itself, a source of substantive rights. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Summary judgment is thus properly granted in favor of defendants on this claim for relief.

### 4. Plaintiffs' Equal Protection Claim

Plaintiffs allege that Section 85702 discriminates against the "class" of registered lobbyists by denying them the right to speak freely and to associate politically with candidates of their choosing while "permitting other similarly situated persons the opportunity to freely exercise their rights" under the same statutory scheme. Compl., filed May 3, 2001, ¶ 29. Plaintiffs further contend that this "disparate treatment is not closely drawn to avoid unnecessary abridgement of associa-

tional freedoms and is not rationally related to any legitimate governmental interest." *Id.*

 Plaintiffs do not claim they are members of a "suspect" classification; accordingly, the court considers Section 85702 under the less demanding "rational relationship" test, rather than the "strict scrutiny" test applied in suspect classification cases. *See City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Under the rational relationship test, the court must determine whether the classification drawn by the statute is rationally related to a legitimate state interest. *Hays v. Wood,* 25 Cal.3d 772, 786, 160 Cal.Rptr. 102, 603 P.2d 19 (1979).[14] Thus, the test requires two inquires: (1) to identify the goals or ends sought to be achieved or furthered by the statute; and (2) to determine if the classification in question rests upon some reasonable ground of differentiation which fairly relates to the object of the regulation. *Id.* at 786–88, 160 Cal.Rptr. 102, 603 P.2d 19.

 Regarding the first inquiry, plaintiffs do not dispute that the State has a legitimate interest in preventing actual corruption or the appearance of actual corruption. *See* Section 2.b., *supra.* Plaintiffs do, however, contend that under the second inquiry, defendants have not shown a "reasonable" basis for treating lobbyists differently; plaintiffs assert that lobbyists are similarly situated to all other persons subject to the PRA and should not be treated differently. Defendants, on the other hand, assert that "registered lobbyists" are *not* "similarly situated" to all other persons who are not registered lobbyists—registered lobbyists are members

---

14. The court does not consider the parties' arguments regarding whether the interest at stake here could meet the "compelling state interest" requirement applied under the strict scrutiny test. That issue is not before the court.

of the only "class" of persons who *are paid* by others to influence legislative or governmental action or policy through direct contact with elected state officials or candidates.

Defendants are correct. Registered lobbyists are in a different position than other persons subject to the PRA, since they are paid to influence the course of government and the laws enacted which affect the lives of all California citizens. As a result, special concerns regarding lobbyists' activities exist which do not apply to other persons. When lobbyists make a political contribution from their own funds to those persons whose actions they are paid to influence, there is at least the appearance of corruption. *See* Defs.' MSJ, Ex. F.[15]

The United States Supreme Court has recognized that lobbyists may be treated differently because of this fact. *See United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (upholding disclosure law directed at lobbyists for reason that legislators must know whose interests they were being asked to promote). Moreover, in *NCRL*, a case substantially similar to this one, the court rejected plaintiffs' argument that the ban on lobbyist contributions violated the Fourteenth Amendment because it treated lobbyists differently than it treated the general population with respect to their fundamental right to associate. 168 F.3d at 717. There, the court held that because the State had "advanced strong reasons" for the ban, which the United States Supreme Court had "expressly validated," plaintiffs

could not maintain their equal protection claim. *Id.* The same is true here.

Defendants have shown that Section 85702 reasonably treats registered lobbyists differently in light of their special position (i.e., being paid to influence California government), and said classification is rationally related to the undisputed, legitimate state interest in preventing corruption or the appearance thereof. For these reasons, the court grants summary judgment in favor of defendants as to this claim for relief.

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiffs' motion for summary judgment, and GRANTS judgment in favor of defendants, pursuant to their motion, on all of plaintiffs' claims for relief. The clerk of the court is directed to close this file.

IT IS SO ORDERED.

---

**15.** The court in *NCRL* wrote,
> With respect to actual corruption, lobbyists are paid to effectuate particular political outcomes. The pressure on them to perform mounts as legislation winds its way through the system. If lobbyists are free to contribute to legislators while pet projects sit before them, the temptation to exchange dollars for political favors can be powerful. [Additionally,] [e]ven if lobbyists have no intention of directly purchasing favorable treatment, appearances may be otherwise. The First Amendment does not prevent states ... from recognizing these dangers and taking reasonable steps to ensure that the appearance of corruption does not undermine public confidence in the integrity of representative democracy.

168 F.3d at 715 (internal quotations and citations omitted).